FROM: 69388510
TO:
SUBJECT: MOTION 2255 PART I
DATE: 01/17/2026 06:35:57 PM

CASE No. CR-23-331-JD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

Lammon Russell Blonner

Petitioner,

v. Case No. CR-23-331-JD

United States Of America

Respondent.
__________________________/

MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCES:

Petitioner Lammon Russell Blonner, hereby submits the following memorandum of law in support of his motion to vacate, set aside, or correct sentences.

I - FACTUAL BACKGROUND - STATEMENT OF THE CASE :

On August 16, 2023, a grand jury issued an indictment charging petitioner with eight drug and gun related offenses. Doc. 16. On September 28, 2023, petitioner entered into a plea agreement, together with a plea supplement filed under seal, with the United States and pleaded guilty to Counts 1 and 6, of participating in a drug conspiracy, in violation of 18 U.S.C. 846, and Count 6 of being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1) of the indictment. Doc. 40, 2 (Plea agreement - Attachment 1).

In his plea agreement, petitioner waived his "right to appeal his guilty plea" and his sentence, but did not waive collateral attack (motion 2255) under the Ineffective Assistance of Counsel. At the change of plea hearing on October 5, 2023, the district court ensured that petitioner understood the rights he was waiving. Change of Plea Tr. at 28: 7-29:4. Petitioner assured this court that he had reviewed the plea agreement with his counsel, he understood the questions, and his answers were truthful. Id. at 11:18-15:24. The petitioner also testified that he signed his plea agreement freely, knowingly, and voluntarily. Change of his plea Tr. at 27:9. This Court accepted the petitioner's guilty plea and found that petitioner "understands the charges against him, the penalties, the potential punishments, and the consequences

of his guilty plea. Id. at 38:3.

On July 18, 2024, the district court sentenced the petitioner to concurrent terms of 300 and 180 months' concurrently, within the advisory guideline range of 262-327 months. Sent. Tr. at 44:7; Doc. 74 at 1. The district court also imposed a term of five years supervised release. Sent. Tr. at 44:10. Despite the appellate waiver contained in the plea agreement, the petitioner filed a notice of appeal. Doc. 76. On March 14, 2025, the United States court of appeals for the Tenth Circuit enforced the appellate waiver and dismissed the appeal in this case. United States v. Lammon Blonner, 2025 U.S. Appx. LEXIS 5996 (10th Cir. 2025). Petitioner did not appeal to the Supreme Court.

II - TIMELINESS:

Petitioner's motion 2255 is timely if filed on or before March 14, 2026 plus 90 days that account for the Supreme Court deadline to file a certiorari.

III - STANDARD OF LAW:

To prevail on a Strickland ineffective assistance of counsel claim, a petitioner must show (1) deficient performance on the part of his attorney and (2) that he suffered prejudice as a result thereof. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). To prove the deficiency prong, the petitioner need only show that his "counsel's representation fell below an objective standard of reasonableness". Porter v. McCollum, 558 U.S. 30, 38 (2009), quoting Strickland, 466 U.S. at 668. In making such proof, "[a] petitioner must identify specific acts or omissions that were not the result of reasonable professional judgment, and a court should deem these acts or omissions deficient only if they 'were outside the wide range of professionally competent assistance". Strickland, 466 U.S. at 690.

To prove the prejudice prong, the petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". Strickland 466 U.S. at 694. A petitioner need not show "that counsel's deficient conduct more likely than not altered the outcome' of his potential proceeding, but rather must establish 'a probability sufficient to undermine confidence in [that] outcome". Strickland, 466 U.S. at 693-94.

The Sixth Amendment right to effective assistance of counsel imposes a duty on attorneys to advise clients of important developments in a criminal case and to consult with client regarding 'important decisions' and their consequences. Strickland, 466 U.S. at 668. Effective counsel must therefore consult with a client before accepting or rejecting a plea offer. Id. Failure to do so constitutes ineffective assistance. Id. Courts have applied the Strickland test to claims of ineffective assistance rendered during

the plea negotiation process. Hill v. Lockhart, 474 U.S. 52, at 58 (1985). In such cases, counsel's ineffective assistance is deemed prejudicial if, but for the errors, there exists a reasonable probability that the defendant would not have entered a guilty plea, but would have insisted on proceeding to trial. Consequently, there exists a reasonable probability that the outcome of the instant case would have been far different had trial counsel Mr. Johnson advised him of the consequences of the plea agreement as petitioner was facing a long sentence regardless of whether he pleaded guilty or proceeded to trial. Petitioner, therefore, suffered ineffective assistance of counsel pursuant to Strickland. Further, Mr. Blonner will prove that he did not enter his guilty pleas knowingly, intelligently and voluntarily.

* * * * *

GROUND ONE:

COUNSEL WAS INEFFECTIVE FOR MISADVISING PETITIONER OF HIS SENTENCING EXPOSURE, NOT KNOWING THE CONSEQUENCES OF HIS GUILTY PLEAS, AS PETITIONER DID NOT ENTER HIS GUILTY PLEAS KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY :

From the inception of this case, petitioner asserted his innocence to his trial attorney Mr. Michael Johnson and to his family represented by his fiance, Kerstin Givens and his cousin Torquisha Keesee who both communicated with Mr. Johnson (Exhibit A). Being the mule in the drug enterprise and distribution, paid only $240, absent his planning to operate the complex drug distribution, petitioner has disputed the severity and verity of the charges filed against him and told his trial attorney Mr. Johnson that he wanted to proceed to trial that was indeed scheduled to start on October 10, 2023.

Before petitioner entered his guilty pleas, Mr. Johnson told petitioner and his fiance Kerstin Givens as well as petitioner's cousin Torquisha Keesee that petitioner is looking for a sentence range of 10-15 years if he pleads guilty. But if he proceeds to trial, petitioner's sentencing exposure is much more severe as the government would introduce witnesses at trial with evidence to convict him. Thus, according to Mr. Johnson, petitioner's chances with a plea agreement with the government were much better if he pleads guilty than with proceeding to trial. Accordingly, petitioner signed the plea agreement and trusted Mr. Johnson's legal advice to plead guilty and accept responsibility and told the court during the change of plea hearing at 33:22-34, on October 5, 2023, that he understood the statutory minimum penalties for both Count 1 and Count 6 of the indictment that he pleaded for: 21 U.S.C. 846 and 18 U.S.C. 922(g)(1) both a statutory minimum of 10 years and 15 years, respectively. Petitioner also told the court that he discussed his plea

agreement with Mr. Johnson as to the advisory sentencing guidelines of punishment (ECF 30-3 at 20), but the plea colloquy did not ask questions related to off-the-record advice from Mr. Johnson provided, who told petitioner that the judge has discretion to sentence petitioner to 10-15 years on both Count 1 and Count 6 to run concurrently. See change of plea hearing (Doc. 30-3 at 27).

THE COURT: Has anyone made any promise or assurance to you that is not in these documents to persuade you to accept this plea agreement ?

THE DEFENDANT: No, ma'am

THE COURT: Has anyone attempted to force you to plead guilty or threatened you in any way to get you to accept these agreements?

THE DEFENDANT: No, ma'am

THE COURT: did you sign both the plea agreement and the plea supplement freely, knowingly, and voluntarily ?

THE DEFENDANT: Yes, ma'am.

Although Blonner confirmed to the court that he still wished to plead guilty, he did so unknowingly of his "actual" sentencing exposure a misadvised by his counsel pre-plea as presented infra, which creates an error in the plea-taking process. Petitioner, who does not have a GED and is known with mental illness, continued with a confused mind. Rule 11(d)(2)(B) is designed to "allow a hastily entered plea made with unsure heart and confused mind to be undone ...". United States v. Alexander, 948 F.2d 1002, at 1004 (6th Cir. 1991)(quoting United States v. Carr, 740 F.2d 339, 345 (5th Cir. 1984)).

Based on petitioner's trust in Mr. Johnson's legal advice regarding petitioner's sentencing exposure if petitioner pleaded guilty and accepted responsibility, petitioner accepted to proceed to his change of his guilty pleas on October 5, 2023, though Mr. Johnson never advised him of the law pre-plea that Count 1 carries a a 10-year mandatory minimum and Count 6 carries a 15-year mandatory minimum until petitioner heard it during the plea hearing from the Judge, for the first time . Further, it was not until after petitioner received his PSR that he and his family discovered for the first time that Mr. Johnson misadvised petitioner regarding his "actual" sentencing exposure as the PSR determined that petitioner was instead facing a long sentence ranging 210-262 months (Exhibit B). On March 1, 2024, Mr. Johnson notified petitioner of this 180 degree change to his sentencing guidelines that was surprising to petitioner (Exhibits A and B) who requested from Mr. Johnson to withdraw his guilty pleas.

---

FROM: 69388510
TO:
SUBJECT: Motion 2255 - Part II
DATE: 01/17/2026 06:36:13 PM

CASE No. CR-23-331-JD

Accordingly, petitioner tried to get answers to this 180 degree change in his sentencing exposure, by contacting the law office of Mr. Johnson asking for guidance, but with no avail. As a result, on March 26, 2024, petitioner's fiance Ms. Givens sent a text message to Mr. Johnson (Exhibit A) asking to withdraw the guilty pleas early in the proceedings, just after the plea colloquy:

"Good morning ... lammon Blonner wanted me to ask you if you have filed the motion to withdraw plea, that he does not understand ?".

Mr. Johnson replied:

"No, because he never told me that I don't know how many times, so this is all new to me".

Mr. Johnson also replied:

"He has 14 days to file a motion to withdraw after he is sentenced. However, his ... they will not dismiss all the charges against him like they did for the plea agreement" (Exhibits A and B).

Factually, petitioner and his fiance Mrs. givens researched Mr. Johnson's statements to later discover the "lie", as the motion to withdraw the guilty pleas cannot be filed within 14 days after sentencing, rather Mr. Johnson should have timely honored petitioner's requests on March 1, 2024 and March 26, 2024, to file a motion to withdraw the plea as petitioner asserted his legal innocence to proceed to proceed to trial early in the proceedings, and Mr. Johnson had no excusable reason not to comply with the relevant deadline to file. Accordingly, On July 16, 2024, petitioner's fiance texted Mr. Johnson again:

"Have you filed the motion to withdraw the plea agreement ... ?". But Ms. Givens did not hear back.

Courts have long held that questions of whether a defendant entered a guilty plea knowingly, intelligently, and voluntarily are cognizable in Section 2255 proceedings. See Hulsey v. United States, 369 F.2d 284 (5th Cir. 1966). Nonetheless, a guilty plea may not generally be challenged on collateral attack if not first challenged on direct appeal. See Bousley v. United States, 523 U.S. 614, 621 (1998). Though petitioner Blonner had an appellate waiver in his plea agreement that covers a direct appeal only, he did not waive the right for a collateral attack based on ineffective assistance of counsel. Further, such a plea may still, however, be challenged for the first time on collateral attack when the facts underlying the claim were "dehors the record and their effect on the judgment was not open to consideration and review on appeal". Waley v. Johnston, 316 U.S. 101, 101 (1942); see also Brown v. United States, 688 Fed. Appx. 644, 651-52

(11th Cir. 2017)(providing that "[w]here, however, facts essential to a claim are not in the appellate record, the general rule in favor of a procedural bar does not apply and the issue may be raised on collateral review to permit further factual development".). The same circumstances transpired in the instant case.

Up to his change of plea hearing, Blonner steadfastly adhered to his innocence to proceed to trial that was scheduled to start on October 10, 2023. Blonner now argues that his guilty pleas were the direct result of ineffective assistance of counsel, thus rendering his pleas involuntary. Blonner alleges that attorney Michael Johnson provided affirmative misadvice and misrepresentations as to Blonner's guilty plea, thus rendering ineffective assistance of counsel.

Further, Blonner alleges that counsel misled him to plead guilty under the improper guise that Blonner would receive a shorter sentence for accepting responsibility asking the court for leniency when compared to proceeding to trial, when all but assured Blonner would be convicted at trial. Counsel told Blonner that his sentencing exposure, if he pleads guilty would be in the range of 10-15 years though Blonner's plea agreement did not Capp his sentencing exposure. Additionally, even a precursory review of the Guidelines prior to Blonner's guilty plea would have led a reasonable attorney to speculate that Blonner's Guidelines range would have been a minimum of 210 - 262 months, and possibly 262 - 327 months.

Had Blonner been convicted of all counts at trial, his sentencing exposure would have undoubtedly been higher, of 30 years to life. however, it would have been a distinction without a difference. Whether Blonner plead guilty or was convicted at trial, it was all but assured that Blonner would receive a long sentence. Indeed, Blonner pled guilty and received a 25-year term of imprisonment.

As noted above, Blonner had every intention of seeing his case through trial as his role was mainly the "mule" of the drug enterprise as a mitigating factor, but attorney Johnson foreclosed this option by telling Blonner that the government would introduce witnesses to testify against him and that his chances to be acquitted at trial are dire.

In addition, to the above, Blonner's guilty plea was entered unknowingly due to counsel's misrepresentations that Blonner would receive a reduced sentence as the court has discretion to sentence him to 10-15 year term (range), taking into account his young age (youthful offender guidelines under 5H1.1) and first time offender in the federal system, in addition to his minor role in the offense as a mule in the pyramid of distribution as a mitigating sentencing factor.

In Brady v. United States, the Supreme Court discussed the standard as to the voluntariness of guilty pleas:

(A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassments), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.) bribes.

Brady v. United States v., 397 U.S. 742, 755 (1970)(emphasis added).

Mr. Johnson was ineffective for advising Blonner to plead guilty where it was all but assured Blonner would receive a long sentence regardless of whether he pleaded guilty or proceeded to trial. As a result, Blonner repeatedly asked his counsel to withdraw his guilty pleas to proceed to trial as he asserted his legal innocence early in the proceedings, but with no avail. See Supra (Exhibits B and C).

PREJUDICE :

In Lee v. United States, the Supreme Court examined the prejudice inquiry established in Hill v. Lockhart that "the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial". Lee v. United States, 137 S.Ct. 1958, 1965 (2017)(quoting Hill; 474 U.S. at 59). In doing so, the Court held:

"The dissent contends that a defendant must also show that he would have been better off going going to trial. That is true when the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error for instance, where a defendant alleges that his lawyer should have but did not seek to suppress an improperly obtained confession. Premo v. Moore, 562 U.S. 115, 118 (2011); cf., e.g., Hill, 474 U.S. at 59, 106 S.Ct. 366 (discussing failure to investigate potentially exculpatory evidence).

Not all errors, however, are that sort. here Lee knew, correctly, that his prospects of acquittal at trial are grim, and his attorney's error had nothing to do with that. The error was instead one that affected Lee's understanding of the consequences of pleading guilty. the Court confronted precisely this kind of error in Hill. See id, at 60, 106 S.Ct. 366 ("the claimed error of counsel in erroneous advice as to eligibility for parole"). Rather than asking how a hypothetical trial would have played out absent the error, the Court considered whether there was an adequate showing that the defendant, properly advised, would have opted to go to trial. Lee, 137 S. Ct. at 1965.

Here, as in Lee, Blonner's ineffective assistance of counsel claim does not turn on the prospects of success at trial. Given the high probability of a long sentence regardless of how he proceeded, Blonner had nothing to lose by proceeding to trial. as the Court noted in lee:

" A defendant without any viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial. But that is not because the prejudice inquiry in this context looks to the probability of a conviction for its own sake. It is instead because defendant obviously weigh their prospects at trial in deciding whether to accept a plea. Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the government offers one.

But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. the decision whether to plead guilty also involves assessing the respective consequences of a conviction at trial and by plea. When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive". Lee, at 1966 (emphasis added).

The consequences of Blonner's guilty pleas and proceeding to trial were similarly dire. Either option had high potential for resulting in a long sentence. However, it was Mr. Johnson's misadvice and misrepresentations that led Blonner to enter his guilty pleas, even when the Court asked him during the change of Plea Hearing whether he understood his sentencing statutory exposure as the record was not fully developed at that time and Blonner as lay person did not know yet that he was facing a sentence that can reach 327 months as his trial counsel failed him by telling him and his family that the court would likely sentence him to the statutory minimum facing 10-15 years. But for counsel's misadvice to Blonner's sentencing exposure and his ineffectiveness to, at least, file Blonner's requested motions to withdraw the guilty pleas, Blonner would have proceeded to trial even if the chance of success was slim. Accordingly, Blonner is entitled to 2255 relief.

---

FROM: 69388510
TO:
SUBJECT: MOTION 2255 - PART III
DATE: 01/17/2026 06:37:51 PM

CASE No. CR-23-331-JD

EVIDENTIARY HEARING:

"Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, that court shall ... grant a prompt hearing there on, determine the issues and make findings of fact and conclusions of law with respect thereto". 28 U.S.C. 2255(b). Blonner has filed off-the-record exhibits plus credible factual evidence and submits that an evidentiary hearing is required to resolve Blonner's claims to ineffective assistance of counsel. Brecheen v. Reynolds, 41 F.3d 1343, 1362 (10th Cir. 1994); see also Hernandez v. United States, 778 F.3d 1230, 1232 (11th Cir. 2015)(quoting Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014)). As set forth above, Blonner is entitled to habeas relief on the instant claims. The record certainly does not conclusively show otherwise.

CONCLUSION :

Based on the forgoing, Blonner respectfully requests the Court schedule this matter for an evidentiary hearing and grant 2255 relief accordingly.

Respectfully Submitted,

Lammon Russell Blonner [signature] 1-30-2026
# 69388-510
FCI Williamsburg
P.O. Box 340
salters, SC 29590

CERTIFICATE OF SERVICE

I, hereby certify that the above motion has been deposited in the Institution's mailroom, on the 30th day of January, 2026. A copy of this vessel was mailed to the following individual.

SERVED Travis Leverett, AUSA
210 Park Avenue, Ste 400
Oklahoma City, OK 73102

/S/ [signature]

Exhibit A

FROM: 69388510
TO:
SUBJECT: AFFIDAVIT OF KERSTIN GIVENS
DATE: 01/10/2026 10:19:59 AM

CASE No. CR-23-331-JD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

Lammon Russell Blonner,

Petitioner,

v. CASE No. CR-23-331-JD

United States Of America,

Respondent.
_______________________________/

AFFIDAVIT OF KERSTIN GIVENS

I, Kerstin Givens, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief.

1 - I am the fiance of Petitioner Lammon Russell Blonner, in the above captioned case.

2 - I have been involved in the proceedings of this case, as I have communicated with Lammon's attorney Michael Johnson who represented Lammon before, during and after Lammon entered his guilty pleas, till sentencing.

3 - I write this affidavit to describe the temporal sequence of events in my interactions with attorney Johnson, related to this case.

4 - From the inception of this case, Lammon asserted his innocence to me and to his attorney as to the severity and verity of the charges filed against him and told Mr. Johnson that he wanted to proceed to trial that was scheduled on October 10, 2023.

5 - Before Mr. Lammon entered his guilty pleas, Mr. Johnson told me and told Lammon's cousin Torquisha Keesee that Lammon is looking for a sentence range of 10 years if he pled guilty. But if he proceeds to trial, his sentencing exposure is much more severe as the government would introduce more witnesses to testify against Lammon as those witnesses would bring the drugs back to Lammon, though Lammon never talked to none of those witnesses nor texted them.

6 - Accordingly, Based on our trust in Mr. Johnson's legal advice regarding Lammon's sentencing exposure if Lammon pleads guilty and accepts responsibility, Lammon accepted to proceed to his change of his pleas.

7 - It was not until after Lammon received his PSR that we discover for the first time, that Mr. Johnson misadvised Lammon regarding his sentencing exposure as the PSR determined that Lammon was facing a long sentence ranging 210-262 months. On March 1, 2024, Mr. Johnson notified Lammon of this 180 degree change to his sentencing exposure that was surprising to all of us.

8 - It took me couple weeks to recover from the shock and to process what has transpired to lead Mr. Johnson lie to us (myself, Lammon, and his cousin Torquisha) as he told us a range of 10 years of sentencing exposure.

9 - I, myself and Lammon repeatedly tried to call the law office of Mr. Johnson, but with no avail as nobody at his office picked up the phone, nor did Mr. Johnson came to visit Lammon in custody to provide him a legal advice of where are we headed as to the new PSR sentencing calculations.

10 - On Tuesday March 26, 2024, I immediately texted Mr. Johnson:

"Good morning ... Lammon Blonner wanted me to ask you if you have filed the motion yet to withdraw plea, that he does not understand ?".

11 - Mr. Johnson replied:

"No, because he never told me that [I don't know] how many times, so this is all new to me".

12 - I replied:

" All right and thank you, I will let him know ..."

13 - Mr. Johnson falsely replied:

" He has 14 days to file a motion to withdraw after he is sentenced. However, his ... they'll not dismiss all the charges against him like they did for the plea agreement".

14 - I replied:

"All right, I'll be sure to tell him that, and thank you".

15 - As a lay person, I researched what Mr. Johnson statements mean over the next two months, to later discover that Mr. Johnson statement that Lammon has 14 days to file the motion to withdraw plea [after] sentencing is nothing but a lie". To add, his statement that the government will not dismiss all the charges against him by dismantling the plea agreement after sentencing is also misleading because the motion to withdraw plea should be or have been filed ASAP and before sentencing.

16 - Accordingly, on July 16, 2024, I re-texted Mr. Johnson:

"have you filed the motion to withdraw the plea agreement ... ? This Kerstin Givens and I'm asking for Lammon Blonner".

17 - Mr. Johnson failed to respond. I did not hear from him till later that day. Mr. Johnson called me back

and was really rude on the phone and did not acknowledge my repeated text messages from March 2024 to July 2024 that expressly told him Lammon's request to withdraw the plea. Mr. Johnson [knew] that Lammon does not even have a GED nor he is able to write the court and is illiterate in law to file his own motions, pro se.

18 - On July 18, 2024, the day of sentencing, Lammon met with Mr. Johnson at the Court House building before sentencing. Lammon asked Mr. Johnson repeatedly: "why you never filed the motion to withdraw my guilty plea?.

19 - Mr. Johnson replied:

"It is too late - the favor is against you; and he stood up abruptly and walked out".

20 - Lammon had to proceed to sentencing as he was left with no other choices, but to face the inevitable 300-month sentence, beyond what we were told before pleading guilty, not knowing the consequences of the guilty plea. To date, I still believe there has been miscarriage of justice in this case simply because Lammon had nothing to lose by proceeding to trial instead, even knowing that he would not be acquitted at trial, simply because his sentencing exposure would have been the same had he pleaded guilty (262 - 327 months) or being convicted at trial (292-365 months).

21 - Had Mr. Johnson advised Lammon correctly before the plea hearing that Lammon would be facing a long sentence regardless of whether he pleaded guilty or proceeded to trial, Lammon would have exercised his constitutional right at trial.

22- Signed under penalty of perjury. 28 U.S.C. 1746

Respectfully Submitted,

Kerstin Givens

NOTARIZED Kerstin Givens

TED HURT NOTARY PUBLIC #12007277 IN AND FOR STATE OF OKLAHOMA SEMINOLE COUNTY

Ted Hurt

08-02-2028

Exhibit B

---

FROM: 69388510
TO:
SUBJECT: AFFIDAVIT OF LAMMON BLONNER
DATE: 01/15/2026 10:19:38 AM

CASE No. CR-23-331-JD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

Lammon Russell Blonner,

Petitioner,

v. CASE No. CR-23-331-JD

United States Of America,

Respondent.
__________________________/

AFFIDAVIT OF LAMMON RUSSELL BLONNER

I, Lamon Blonner, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief.

1 - I am the Petitioner Lammon Russell Blonner, in the above captioned case. I write this affidavit to support my Memorandum of Law in Support of my Motion under 28 U.S.C. 2255.

2 - I have communicated with my attorney Michael Johnson who represented me before, during and after I entered my guilty pleas, till sentencing.

3 - I write this affidavit to describe the temporal sequence of events in my interactions with attorney Johnson, related to this case.

4 - From the inception of this case, I asserted my innocence to my attorney as to the severity and verity of the charges filed against me and told Mr. Johnson that he wanted to proceed to trial that was scheduled on October 10, 2023. On October 5, 2023, I pleaded guilty to Count 1 and Count 6 of the indictment, for participating in a drug conspiracy in violation of 18 U.S.C. 846, and Count 6 of being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g)(1). On July 18, 2024, this Court sentenced me to 300 months of imprisonment.

5 - Before I entered his guilty pleas, Mr. Johnson told me and told my fiance Ms. Kerstin Givens and my cousin Torquisha Keesee that I was looking for a sentence range of 10 years if I plead guilty. But if I proceed to trial, my sentencing exposure is much more severe as the government would introduce more witnesses to testify against me as if those witnesses would bring the drugs back to me, though I never talked

to none of those witnesses nor texted them.

6 - Accordingly, Based on my trust in Mr. Johnson's legal advice regarding my sentencing exposure if I plead guilty and accept responsibility, I accepted to proceed to my change of my pleas.

7 - It was not until after I received my PSR that I discovered for the first time, that Mr. Johnson misadvised me regarding my sentencing exposure as the PSR determined that I was facing a long sentence ranging 210-262 months. On March 1, 2024, Mr. Johnson notified me of this 180 degree change to my sentencing exposure that was surprising to me and my family.

8 - It took me couple weeks to recover from the shock and to process what has transpired to lead Mr. Johnson lie to us (myself, my fiance, and my cousin Torquisha) as he told us a range of 10 years of sentencing exposure.

9 - I, myself and fiance repeatedly tried to call the law office of Mr. Johnson, but with no avail as nobody at his office picked up the phone, nor did Mr. Johnson came to visit me in custody to provide me a legal advice of where are we headed as to the new PSR sentencing calculations.

10 - On Tuesday March 26, 2024, my fiance Ms. Givens immediately texted Mr. Johnson:

"Good morning ... Lammon Blonner wanted me to ask you if you have filed the motion yet to withdraw plea, that he does not understand ?".

11 - Mr. Johnson replied:

"No, because he never told me that [I don't know] how many times, so this is all new to me".

12 - My fiance replied:

" All right and thank you, I will let him know ..."

13 - Mr. Johnson falsely replied:

" He has 14 days to file a motion to withdraw after he is sentenced. However, his ... they'll not dismiss all the charges against him like they did for the plea agreement".

14 - My fiance replied:

"All right, I'll be sure to tell him that, and thank you".

15 - As a lay person, my fiance researched what Mr. Johnson statements mean over the next two months, to later discover that Mr. Johnson statement that I have has 14 days to file the motion to withdraw plea [after] sentencing is nothing but a lie". To add, his statement that the government will not dismiss all the charges against me by dismantling the plea agreement after sentencing is also misleading because the motion to withdraw plea should be or have been filed ASAP and before sentencing.

16 - Accordingly, on July 16, 2024, my fiance re-texted Mr. Johnson:

---

"have you filed the motion to withdraw the plea agreement ... ? This Kerstin Givens and I'm asking for Lammon Blonner".

17 - Mr. Johnson failed to respond. Neither my fiance nor myself heard from him till later that day. Mr. Johnson called my fiance back and was really rude on the phone and did not acknowledge my fiance's repeated text messages from March 2024 to July 2024 that expressly asked him to withdraw the plea. Mr. Johnson [knew] that I do not even have a GED nor I am able to write the court and am illiterate in law to file my own motions, pro se.

18 - On July 18, 2024, the day of sentencing, I met with Mr. Johnson at the Court House building before sentencing. I asked Mr. Johnson repeatedly: "why you never filed the motion to withdraw my guilty plea?.

19 - Mr. Johnson replied:

"It is too late - the favor is against you; and he stood up abruptly and walked out".

20 - I had to proceed to sentencing as I was left with no other choices, but to face the inevitable 300-month sentence, beyond what I was told before pleading guilty, not knowing the consequences of the guilty plea. To date, I still believe there has been miscarriage of justice in my case simply because I had nothing to lose by proceeding to trial instead, even knowing that I would not be acquitted at trial, simply because my sentencing exposure would have been the same had I pleaded guilty (262 - 327 months) or being convicted at trial (292-365 months).

21 - Had Mr. Johnson advised me correctly before the plea hearing that I would be facing a long sentence regardless of whether I pleaded guilty or proceeded to trial, I would have exercised my constitutional right at trial.

22- Signed under penalty of perjury. 28 U.S.C. 1746

Respectfully Submitted,

Lammon Russell Blonner
# 69388-510
FCI Williamsburg
P.O. Box 340
Salters, SC 29590

LaMonn Blonner 1-15-2026

Exhibit C

Michae...

Tuesday, Mar 26 • 6:09 PM

Good evening..LaMonn Blonner wanted me to ask you If you have filed the motion vet to

plea , that he does not understand.? 2

No because he never told me that I don't know how many times, so this is all new to me

3

All right and thank you I will let him know..

He has 14 days to file a motion to withdraw after he is sentenced howeve[illegible]his

dismiss all the charges against him like they did for the play agreement

Alright, I'll be sure to tell him that. And thank you.


Michael J...
Tuesday, Jul 16, 2024 • 5:05 PM
Have you filed the motion to withdraw the plea agreement..? This is Kerstin

the motion to withdraw the plea agreement..? This is Kerstin Givens and I'm asking for LaMonn Blonner..